# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LINDA RIDDLE and RICARDO WOODS, individually and on behalf of a class of similarly situated individuals,** | ) ) ) | **Case No. 05 C 5880** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **District Judge Ronald Guzman** |
| **v.** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **NATIONAL SECURITY AGENCY, INC., IBRIHAM A. KISWANI and ABDUL S. KISWANI,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Following the entry of a stipulated judgment against defendants, plaintiffs filed the present motion seeking an award of $77,812.21 in attorneys' fees and $2,230.81 in costs. (Pls.' Mot. at 2.) [Dkt 173.][1] The motion was referred here for decision. [Dkt 178.] For the reasons set forth herein, the motion is granted in part and denied in part. Plaintiffs are awarded fees in the amount of $23,061.04 and costs in the amount of $739.30.

---

[1] Attached to plaintiffs' fee motion are the parties' joint statement, cited as "Joint Stmt.," and lead plaintiffs' counsel Steven Fuoco's affidavit with exhibits ("Fuoco Aff." [dkt 173-3]). Plaintiffs' requested fee award as stated in the joint statement includes an apparent calculation error. The fee request includes 298.80 hours of lead counsel Steven Fuoco's time at $245 per hour. (Joint Stmt., Ex. A.) [Dkt 173-2.] That totals $73,206, not $73,230.50 as plaintiffs state. (*Id*.) Therefore, after subtracting $3,524.79 for a previous fee award (as discussed further herein) and adding in the other attorneys' requested time, the total amount sought is $77,812.21, not $77,836.71 as plaintiffs state. (Pls.' Mot. at 2; Joint Stmt., Ex. A.)

## BACKGROUND

Plaintiffs Linda Riddle and Ricardo Woods filed this action in October 2005, alleging putative class claims for fraud and for violation of the Fair Labor Standards Act ("FLSA") and the Illinois Wage Payment and Collection Act ("IWPCA"). (Compl.) [Dkt 1.] On September 13, 2007, a portion of the FLSA claim was certified as a collective action, although supplemental jurisdiction over the other two claims was declined. [Dkt 107.]

In 2009, the parties reached a settlement, and a stipulated judgment was subsequently entered providing for specific payments to the two named plaintiffs and 17 opt-in plaintiffs. (Stip. J.) [Dkt 172.] The court retained jurisdiction to adjudicate the issue of attorney's fees pursuant to Fed. R. Civ. P. 54. (*Id.*) Counsel for the parties subsequently conferred pursuant to Northern District of Illinois Local Rule 54.3, trying to reach a compromise about the fees to be awarded to plaintiffs' counsel.

Because the parties were unable to agree on fees, plaintiffs filed the present motion for an award of fees and costs. (Pls.' Mot.) Pursuant to Local Rule 54.3(e), the parties also submitted a joint statement of the fees and costs at issue. (Joint Stmt.) Defendants filed their response to the motion (Defs.' Resp.) [dkt 181], and plaintiffs filed their reply (Pls.' Reply) [dkt 183].

When the motion was first referred, the court assumed that it could be resolved quickly -- as attorney's fees petitions should be. But the parties' disputes have made this a much longer and more complex process than anticipated. "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## DISCUSSION

### I.      Attorney's Fees

#### *Attorney's fees awards in FLSA cases*

The FLSA provides that, in addition to any judgment awarded to the plaintiff(s), "[t]he court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to reasonable attorney's fees under the FLSA." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). Here, plaintiffs have prevailed by virtue of the stipulated judgment entered in their favor. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). Defendants do not oppose that conclusion, although they challenge the degree of plaintiffs' success.

The court has discretion in determining the appropriate amount of an attorney's fee award to a prevailing party. *Hensley*, 461 U.S. at 437. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. That initial figure is commonly referred to as the lodestar amount. *Spegon*, 175 F.3d at 550. The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Hensley*, 461 U.S. at 433, 436. In submitting a request for fees, counsel should exercise billing judgment: "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 434. Similarly, the district court has the obligation to exclude from this initial calculation any hours that are inadequately documented

or that were not reasonably expended on the litigation. *Id.* at 433-34; *Spegon*, 175 F.3d 550; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996).

Once the lodestar amount is determined, the court may then adjust the award for a number of factors, "including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434; *Spegon*, 175 F.3d at 550; *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. When considering a fee award where the plaintiff has been partially successful, the court must determine whether the unsuccessful claims were unrelated to the successful claims, or whether the unsuccessful claims stemmed from a common core of facts or legal theories related to the successful claims. *Id.* at 434-35. Time spent on related claims that ultimately prove unsuccessful should not automatically be excluded from the fee calculation. Instead, the focus should be "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435; *accord Spanish Action Comm.*, 811 F.2d at 1133. "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (quoting *Connolly v. Natl. School Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)).

### *Local Rule 54.3 and the Parties' Submissions*

Local Rule 54.3 imposes on counsel for the parties the obligation to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded," and to exchange certain specified information. N.D. Ill. L.R. 54.3(d). The rule is designed to enable the parties to exchange sufficient information so that they may attempt to reach a compromise about

the fees to be awarded. *Jones v. Ameriquest Mortg. Co.*, No. 05 C 0432, 2008 WL 4686152 at *2 (N.D. Ill. May 19, 2008). If a compromise cannot be reached, the party seeking fees may file a motion, attaching a joint statement prepared by both parties. N.D. Ill. L.R. 54.3(e). The joint statement must specify, *inter alia*, the total amount of fees or related expenses sought, the total amount which the responding party believes should be awarded, and "a brief description of each specific dispute remaining between the parties as to the fees or expenses." *Id*. "Rule 54.3 was adopted by the district court as a means of reducing the time spent on fee disputes." *Sears, Roebuck & Co. v. Menard, Inc.*, No. 01 C 9843, 2004 WL 2423964 at *1 (N.D. Ill. Sept. 23, 2004). Following the rule compels the parties to focus on specifics, and should result in the presentation of "discrete objections to specific items in the fee petition that can be ruled upon with relative dispatch." *Id.*

According to plaintiffs, counsel for the parties met "face to face twice and mutually exchanged required time and work records." (Pls.' Mot. at 2.) Despite those efforts, the parties agreed on very little. In fact, the parties do not even agree on what was agreed. Plaintiffs seek $77,812.21 in fees and $2,230.81 in costs. (Joint Stmt., Ex. A.) Defendants "declined to specify an acceptable fee amount" and "contest all claimed attorney hours . . . not marked with an X" on a summary table defendants prepared which is attached as Exhibit B to the parties' joint statement. (Joint Stmt. at 2; *id*., Ex. B.) On that summary table, defendants listed plaintiffs' counsel's time entries and their respective objections, marking a number of entries with an "X." Although defendants state that the total of entries so marked is 23 hours, by the court's calculation the total in

the joint statement is several hours more. (Joint Stmt., Ex. B.)[2] Plaintiffs fare no better in describing the agreed hours, first as 23 (Pls.' Mot. at 2) and then as 29 (Pls.' Mot. at 8). Even as to this small number of hours – less than 10% of what plaintiffs seek – defendants argue that the time only "is perhaps *partially compensable*" due to plaintiffs' limited success. (Joint Stmt. at 2) (emphasis added.) Defendants do not, however, offer a suggested amount to which they would agree, and instead urge the court to deny plaintiffs' request entirely. (Defs.' Resp. at 15.)

Plaintiffs argue that defendants' objections to the requested fees are so broad as to be frivolous and ask that they be overruled in their entirety. (Pls.' Reply at 1, 15.) Plaintiffs' argument has some force; plaintiffs prevailed in the litigation, and common sense suggests that some attorney time was necessary to do so. On the other hand, plaintiffs' submission is plainly overbroad, too. It does not appear to reflect an effort to exercise billing judgment and remove excessive, redundant or otherwise unnecessary hours, as *Hensley* directs. On the contrary, plaintiffs' lead counsel states that, in his professional judgment, "all attorney time" shown on the time records was reasonable and necessary. (Fuoco Aff. ¶ 17.)

Further complicating matters, plaintiffs' and defendants' submissions are not consistent, either internally or when compared with each other. Defendants oppose an award of attorney's fees based on a variety of objections, and they support those objections with no less than 15 exhibits, including 13 categorical charts (each based on the subject matter of the objection), a "recap" chart of objections, and a "chronological response" to plaintiffs' time entries. (Defs.' Resp., Exs. 1-15.) Defendants' recap chart shows objections of more than 375 hours, notwithstanding the fact that

---

[2] Furthermore, defendants include 39 hours in their categorical exhibit on this objection, 16 marked purely with an "X," and 23 marked with an "X" and additional objections. (Defs.' Resp., Ex. 15.)

plaintiffs seek an award of 342.4 hours (less the previously granted fee award).  (*Id.*, Ex. 1.)[3]  This is so because defendants object to certain time entries on more than one basis.  If a time entry is not compensable, however, it can only be removed from the calculation once.  Defendants also submitted a chronological response to plaintiffs' billing records, but that response is neither a marked-up copy of plaintiffs' submitted records nor an identical transcription of those records.[4]  What is more, defendants' objections on their chronological response are not identical to their objections set forth in the categorical charts.[5]

*Hensley* and its progeny require the court to assess the fee request to determine whether the hours sought should be awarded.  Here, the parties' submissions complicated the court's analysis of the ancillary issue of attorney's fees disproportionately to the scope and nature of the underlying litigation.

## A.    Initial Lodestar Amount

Plaintiffs seek an award of $77,812.21 for the time spent by three attorneys involved in this

---

[3]  It is noted that the total calculation of defendants' recap exhibit does not adjust for defendants' own mathematical errors.

[4]  *Compare* Defs.' Resp., Ex. 15 *with* Fuoco Aff., Group Ex. 5.  For example, some of plaintiffs' counsel's descriptive text is missing from defendants' recitation of plaintiffs' time entries for May 3, 10 and 15, 2006.

[5]  *Compare, e.g.,* February 26, 2007 time entries on Defs.' Resp., Ex.15 with the same entries on Defs.' Resp., Ex. 7: Defendants' chronological response (Ex. 15) notes objections to plaintiffs' February 26, 2007 time entry on the grounds that: (1) the time was related to the unsuccessful class certification motion; (2) the time was unrelated to the results achieved; and (3) the time was spent doing administrative work.  Defendants' categorical response (Ex. 7) specifying the time entries to which they object as administrative does not, however, include the February 26, 2007 entry.

case.[6]  Included in the request are: 298.80 hours expended by their lead counsel, Steven C. Fuoco;

41.90 hours expended by attorney Kimberly Carpenter; and 1.70 hours expended by attorney Tanya

Petermann.  (Joint Stmt., Ex. A.)  Plaintiffs request a billing rate of $245 per hour for Mr. Fuoco,

$190 per hour for Ms. Carpenter, and $100 per hour for Ms. Petermann, and they submit evidence

in support of the requested rates.  (*Id.*; Fuoco Aff.; *id*. Exs. 1, 3, 4.)  Defendants do not object to the

hourly rates claimed for any of plaintiffs' attorneys.  Once plaintiffs provide evidence of their

counsel's billing rate, the defendants bear the burden of demonstrating "why a lower rate is

essential." *People Who Care*, 90 F.3d at 1313.  Defendants' failure to provide evidence challenging

the requested hourly rate is taken as a concession that the rate requested is reasonable.  *Id*.

Next, the number of hours reasonably expended on the litigation must be determined.

Plaintiffs argue that that number is 342.4 hours, but defendants object to the vast majority of the

hours plaintiffs seek.  Defendants lump their objections about the reasonableness of plaintiffs'

counsel's expenditure of hours with their objections to the hours spent on claims in which, they say,

plaintiffs did not prevail.  This confuses the issues, as the court must first determine the initial

lodestar amount and only then determine whether a further reduction for limited success is

appropriate.  *See Hensley*, 461 U.S. at 434; *Spanish Action Comm.*, 811 F.2d at 1138.  Parsing out

defendants' objections, each step of the analysis is addressed below in turn.


### Administrative Time

Defendants identify 48.8 hours of plaintiffs' attorney time that defendants contend was spent

---

[6] As discussed further below, that figure reflects a reduction for $3,524.79 plaintiffs received
following a previous fee award in this case.  (Joint Stmt., Ex. A.)

performing administrative work. (Defs. Resp., Ex. 7.) Included within this set of hours, however, are 2.1 hours to which defendants also object as already paid pursuant to an earlier fee award. Those hours are addressed in the context of that objection and are not addressed here. (*Compare* Defs.' Resp. Ex. 7 *with* Defs.' Resp. Ex. 9.)[7] The remaining 46.7 hours were logged by plaintiffs' counsel in performing tasks such as researching potential opt-in plaintiffs' addresses, preparing and mailing the FLSA case notice and opt-in form, scanning various case documents and e-filing certain documents in the case. (*Id.*) Plaintiffs argue that their attorney fees should be awarded for this work because plaintiffs' lead counsel (Mr. Fuoco) performed it himself since he is in solo practice with no paralegal or administrative assistant. (Pls.' Reply at 9.) Apparently recognizing that some of the logged hours were spent doing delegable work, however, plaintiffs offered to compromise and apply "a paralegal market rate of $150.00 or $140.00 per hour" for this category of work. (*Id.* at 10.) That proposal was rejected by defendants who consider none of this set of hours to be compensable.

The question presented with respect to this set of hours is not whether plaintiffs' counsel had the resources to delegate assignments to paralegal or clerical staff, but rather, whether the work was the sort for which fees are awarded at all. It is well settled that a reasonable attorney's fee should include compensation for paralegal work as well as that of attorneys. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.* at 288 n. 10; *see also Spegon*, 175 F.3d at 553 (stating that "the district court should disallow time spent on what are essentially 'clerical' or secretarial tasks"); *People Who Care*, 90 F.3d at 1315 (finding it reasonable to require attorneys to

---

[7] *Compare* entries dated 5/10/06 (.3), 5/10/06 (.6), 5/10/06 (.3), 5/10/06 (.4), 5/17/06 (.3), 5/23/06 (.2) on Defs.' Resp., Ex. 7 *with* those entries on Defs.' Resp., Ex. 9.

delegate work to the "correct level" of employee).

Two entries totaling .3 hour in this set of time appear to be purely clerical in nature and are not compensable in a fee award (.10 hours billed by Ms. Carpenter on 6/1/06, and .20 hours billed by Mr. Fuoco on 11/19/08 for time spent finding a phone number and delivering a courtesy copy to the court). After this adjustment, however, the remaining collection of time in this set, 46.4 hours, all billed by Mr. Fuoco, while not representing appropriate attorney work, represent time spent on work that is sufficiently complex so as to have justified the efforts of a paralegal. For example, researching potential opt-in plaintiffs' addresses, preparing and sending out the FLSA Case Notice and Consent forms, and electronically filing documents with the court are complex enough to appropriately delegate such tasks to a paralegal. Notably, lawyers and staff are required to undergo court-provided training and certification before being allowed to file documents electronically with the court. *See* N.D. Ill. Gen. Order 09-014, IV(A), viewed at www.ilnd.uscourts.gov/PRESS/GeneralOrder102607.pdf (last visited April 20, 2010). That suggests that electronic filing is more than a purely administrative or clerical task.

Plaintiffs have presented some evidence of a paralegal market rate of $140 or $150 per hour, although they do not indicate whether those rates apply to a paralegal engaged in FLSA work. *See Spegon*, 175 F.3d at 555 n. 6 ("Hourly rates awarded in non-FLSA overtime cases are not particularly relevant as evidence of [an attorney's] market rate . . . because the reasonable hourly rate is capped at the prevailing market rate for attorneys engaged in FLSA work."). Plaintiffs submit the affidavit of employment law attorney Andrew H. Haber, who attests that the standard billing rate for paralegals in his firm with 10 to 15 years of experience is $150 per hour (Fuoco Aff., Ex. 1 ¶ 10), and the deposition testimony of attorney Michael Patrick Connelly, who testified that $140 was a

Chicago market rate for a paralegal's services (*id*., Ex. 2 at 18). Defendants oppose any award for time in this category and therefore do not provide opposing evidence of a paralegal market rate. Plaintiffs' suggested paralegal hourly rate, however, is more expensive than the $100 hourly rate of one of plaintiffs' attorneys, and certainly paralegals, like attorneys, command a range of hourly rates. 46.4 hours in this set will be compensated at the hourly rate of $90 per hour ($4,176), which is a reasonable estimation of paralegal rates for the work done in this category in this case. But .1 hour of Ms. Carpenter's time and .2 hour of Mr. Fuoco's time spent performing purely clerical work will not be compensated.

### *Travel Time*

Defendants object to 59.2 hours they identify as time plaintiffs' lead counsel spent primarily on local train travel to and from court appearances. (Defs.' Resp., Ex. 8.) Included in this figure are 28 entries of two hours each for commuter train travel to and from court appearances, and 3.2 hours block-billed for train travel and meetings with a plaintiff and three witnesses. (*Id*.) During the pendency of this case, plaintiffs' lead counsel, Mr. Fuoco, moved his practice from downtown Chicago to suburban Highland Park and thereafter began recording two hours travel time for each court appearance or other appointment, in addition to the time he logged at each event. (Fuoco Aff. ¶ 13; *id*., Group Ex. 5.) As a result, defendants complain, plaintiffs seek to recover 59.2 hours, or more than $14,000, for Mr. Fuoco's time spent riding the Metra commuter line from Highland Park to Chicago and in walking from the train station to the courthouse. (Defs.' Resp., Ex. 8; Fuoco Aff. ¶ 19.)

Citing *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984), plaintiffs argue that such

time is compensable as part of an award of attorney's fees.  (Pls.' Reply at 11-12.)  In *Henry*, the Seventh Circuit stated that there is a presumption in a fee award under 42 U.S.C. § 1988 "that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time."  738 F.2d at 191, 194.

*Henry* does not support the proposition that an award of attorneys' fees includes time spent commuting.  In that case, the district judge had cut an attorneys' fee request by almost half and had excluded all fees for travel time, although the defendants effectively conceded that the travel was worthwhile by not contending that the total time spent by plaintiffs' lawyers was excessive.  *Id*. at 194.  In discussing the fees for travel time, the court of appeals referred to compensating the lawyer for the "opportunity cost"– the time the plaintiffs' lawyer might otherwise have billed to another client had he not been traveling for the subject case.  *Id*.  Where a lawyer regularly charges his own paying clients for travel time, the court said, that time might also be the subject of a fee award under a fee-shifting statute.  *Id*.[8]

Here, plaintiffs have failed to submit any evidence that Mr. Fuoco regularly charges any paying client for such local travel time or that any of his clients ever agreed to pay for such time.  It cannot be assumed that a paying client would pay $490 dollars more (the fee for two travel hours) for each court appearance because Mr. Fuoco moved his practice further from the courthouse.  As defendants correctly note, there is no evidence that any of Mr. Fuoco's train time was spent working on this case.  Plaintiffs have the burden of supporting their fee request, and they have not demonstrated that an award for time spent in local commuting is reasonable in this instance.

---

[8]  The court observed in *Henry* that all of the travel time was incurred by attorney Percy Julian.  738 F.2d at 194.  His office is shown as located in Madison, Wisconsin, while the case involved civil rights claims relating to housing in Beloit, Wisconsin.  *Id*. at 191.

Likewise, plaintiffs did not separate local travel time from working time in the block-billed time entries on November 28 and 30, 2006 and December 4 and 11, 2006. Again, because it is plaintiffs' burden to demonstrate the reasonableness of requested fees, those 3.2 hours will also be disallowed. The plaintiffs' fee request will thus be reduced by $14,504, or 59.2 hours of Mr. Fuoco's time.

### Motion to Vacate

Early in the case, plaintiffs obtained a default. (Order, Feb. 28, 2006.) [Dkt 24.] Defendants successfully moved to have that default vacated despite a lengthy delay in presenting their motion. (Order, May 25, 2006.) [Dkt 42]. Although not clear from the docket, it appears that plaintiffs were awarded their attorney's fees in conjunction with the default and motion to vacate, and that the parties subsequently settled as to the amount to be paid. (Pls.' Reply, Group Ex. B.)[9]

To settle that award, defendants paid plaintiffs' counsel $3,524, representing 5 hours of Mr. Fuoco's time and 12.1 hours of Ms. Carpenter's time. (*Id*.) Plaintiffs reduced their present request by that amount. (Joint Stmt., Ex. A.) But because plaintiffs did not separately identify in the present fee petition the hours for which they already were paid, defendants argue that no time logged by plaintiffs' counsel from March 6, 2006 through May 25, 2006 (the time period identified as relevant to the prior order) should be awarded. (Defs.' Resp. at 10-11.)

It appears that plaintiffs' counsel provided their detailed time records to defendants' counsel in June 2006, when the compromise figure was reached. (Pls.' Reply, Group Ex. B.) It also appears

---

[9] The papers marked as Group Ex. B were incorrectly attached to Plaintiffs' Reply under Tab C, not Tab B. References to those papers are cited as Group Ex. B.

that the compromise figure was reached after plaintiffs initially demanded "$7,182.50 in attorney fees since March 6, 2006," which plaintiffs explained represented 8.3 hours of Mr. Fuoco's time and 27.1 hours of Ms. Carpenter's time.  (*Id*.)  From these materials, both defendants and the court can identify the hours for which plaintiffs already have been compensated at a compromised rate. Plaintiffs' counsel will not be compensated beyond the $3,524 agreed amount for time they previously identified as relevant to the dismissal and motion to vacate.

Although plaintiffs' initial 2006 request to defendants sought fees for 8.3 hours of Mr. Fuoco's time, the billing records they provided to defendants at the time cover 9.8 of his hours. Since plaintiffs do not explain this discrepancy, and it is their burden to do so, the entire 9.8 hours are included in this analysis (making the total claimed fees $7,550 that were settled for $3,524).  In addition to the $3,524 which plaintiffs agree must be subtracted from the fee award, plaintiffs' petition will be reduced by an additional 4.8 hours of Mr. Fuoco's time and 15 hours of Ms. Carpenter's time, or $4,026, which is the difference between the $7,550 plaintiffs initially itemized in 2006 and the $3,524 plaintiffs accepted as a compromise payment, and the additional unexplained 1.5 hours of Mr. Fuoco's time.


### Double Billing

Defendants identify 11 hours which they complain represent time entries for work already performed by another.  (Defs.' Resp. at 11.)  Defendants do not, however, support their position that plaintiffs' time records are duplicative nor do they even attribute billing records to particular attorneys in their supporting exhibit.  Their brief argument in this regard appears generally to be a complaint not that two attorneys performed the same tasks, but that it was unreasonable for more

than one attorney to work on this case at all.  (*Id*.)  For the first several months of this case, while

Mr. Fuoco was still a partner at O'Hagan, Smith & Amundsen, LLC, he used associates to assist on

the file.  Delegating work can be a cost-effective means of managing the expense of litigation.  A

review of the records does not indicate that plaintiffs' attorneys unnecessarily or unreasonably billed

those 11 hours to the file.  Plaintiffs' hours will not be reduced based on this objection.


### Rule 26(f) Report and Rule 26(a) Initial Disclosures

Defendants object to plaintiffs' billing 6.3 hours to prepare their Fed. R. Civ. P. 26(f) report,

arguing that, "[s]uch a report should not have required more than 1 hour to prepare."  (Defs.' Resp.

at 11.)  Defendants' supporting exhibit (Defs.' Resp., Ex. 11), itemizing the time entries defendants

consider relevant to this objection, however, does not only include time spent to prepare the report,

but also includes time spent associated with other initial matters, like reviewing the applicable rules

and conversing with defendants' counsel.  Moreover, defendants do not submit their own records

showing the time their counsel spent on the Rule 26(f) report, nor any other reason to support their

conclusion that only one hour would be reasonable.  Notably, Local Rule 54.3(d)(5) requires a

respondent who objects to a proposed fee award to provide its own attorneys' time and work records

relating to the litigation and the total amount of attorneys' fees paid by the respondent to its attorney.

N.D. Ill. L.R. 54.3(d)(5).

Defendants similarly object to plaintiffs' billing 6.2 hours to "to comply with Rule 26(a)."

(Defs.' Resp. at 11.)  Here too, however, their calculation includes not only plaintiffs' time spent in

researching and preparing plaintiffs' initial disclosures, but also in communicating with defendants'

counsel in efforts to obtain defendants' overdue disclosures and then reading the disclosures once

received. (Defs.' Resp., Ex. 12.) Again, defendants do not disclose how much time their own counsel billed for work on the disclosures, and defendants do not suggest or explain what amount of time they would deem reasonable for that work. As evidenced by the billing records, plaintiffs' counsel not only spent time associated with plaintiffs' compliance with Rule 26(a), but also spent time associated with the delayed appearance of defendants in the litigation.[10] Plaintiffs' counsel's efforts in this regard are not unreasonable or excessive, and the time billed for those matters will not be reduced based on that objection.

### *Electronic Legal Research*

Plaintiffs include a charge of $1,030.02 for Lexis legal research in their itemization of the costs they seek to recover. (Joint Stmt., Ex. A.) While electronic legal research charges are not recoverable as taxable costs, such charges are recoverable as a subset of attorney's fees. *Haroco, Inc. v. Amer. Natl. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir. 1994). The rationale behind this rule is clear: "The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching." *Id.* Defendants do not object specifically to any particular instance of Lexis usage, but instead generally argue that plaintiffs incurred too many Lexis charges because plaintiffs pursued unsuccessful strategies on unsuccessful claims. (Defs.' Resp. at 14.)

---

[10] According to defendants' own tabulation, 1.2 of the 6.2 hours defendants assert that plaintiffs spent in conjunction with the initial disclosures were actually spent in obtaining defendants' overdue disclosures and then reviewing and analyzing them once received. (Defs.' Resp., Ex. 12.) Despite the inclusion of that time in this category, defendants argue, "Six and one-half hours to prepare such a document is unreasonable." This assertion is inaccurate - both as to the sum (defendants identify 6.2, not 6.5 hours), and as to the nature (characterizing time spent pursuing defendants' disclosures as time spent "to prepare" plaintiffs' submissions).

Plaintiffs, on the other hand, have failed to substantiate their request for the $1,030.02 they seek. Most importantly, plaintiffs have submitted no evidence from which to conclude that the charges were reasonably incurred in the litigation. Although plaintiffs submit Lexis billing records accounting for *some* of their claimed expense, the records do not indicate the purpose of the charge or even the date on which the charge was incurred. Nor can such information be determined with any certainty from counsel's billing records. For example, plaintiffs seek an award of $78.85 for Lexis charges included on a November 2006 bill, but none of counsel's November 2006 time entries refer to Lexis research (and no time was billed in this case in October 2006). Plaintiffs bear the burden of demonstrating the reasonableness of their request for an award covering Lexis charges just as they do for an award covering attorney time. Plaintiffs have failed to do so. $1,030.02 will be deducted from plaintiffs' requested award.

### *Postage & Local Train Expenses*

Plaintiffs seek the recovery of $285.54 for postage associated with their mailings to potential opt-in plaintiffs in this collective action, and $148.80 in commuter train charges. (Joint Stmt., Ex. A.) While postage and travel expenses are not recoverable costs under 28 U.S.C. § 1920, in certain instances either may be recoverable as an element of a reasonable attorney's fee. *See, e.g., Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997); *Heiar v. Crawford Co., Wis.,* 746 F.2d 1190, 1203 (7th Cir. 1984). Because defendants have not objected specifically to plaintiffs' postage charges, and because $285.54 was reasonably incurred for plaintiffs' collective action mailings, that amount is awarded.

On the other hand, charging for the cost of local train travel after counsel moved his office

away from the courthouse is not reasonable for the same reasons that plaintiffs' counsel's time spent commuting is not awarded. Plaintiffs' counsel has not demonstrated that the cost of such commuter travel has been charged to paying clients or that any paying clients have agreed to pay such an expense. The $148.80 commuter train charges will not be awarded.

### Summary of Initial Lodestar

Taking into consideration the above discussed adjustments to the requested fees (including expenses potentially compensable as part of an attorneys' fees award), the revised lodestar calculation is $54,322, consisting of: 183.2 hours of Mr. Fuoco's time ($44,884); 26.8 hours of Ms. Carpenter's time ($5,092); 1.7 hours of Ms. Petermann's time ($170); and 46.4 hours for paralegal work performed by Mr. Fuoco ($4,176). $285.54 for postage also is awarded as an element of a reasonable attorney's fee.

### B.    Adjustment of the Lodestar Amount

Having determined plaintiffs' lodestar amount, the court must next determine whether there are factors that warrant adjusting the fee upward or downward. *Hensley*, 461 U.S. at 434. As discussed above, the amount involved and the results obtained are particularly crucial factors "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.*; *accord Spanish Action Comm.*, 811 F.2d at 1133. "The congressional intent to limit awards to prevailing parties requires that . . . unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services" on unsuccessful claims. *Hensley*, 461 U.S. at 435.

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id*. at 440.

Following *Hensley*, the Seventh Circuit has further explained, "Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount - the product of the number of attorney's hours reasonably expended on the litigation as a whole times a reasonable hourly rate - is likely to be excessive." *Spanish Action Comm.*, 811 F.2d at 1133. "[T]he focus in arriving at the appropriate fee award should be on 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id*. (quoting *Hensley*, 461 U.S. at 435.) "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. The goal is to insure that a plaintiff is compensated for "the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley*." *Ustrak v. Fairman*, 851 F.2d 983, 988, 989 (7th Cir. 1988) (concluding that no exact calculation of "this elusive counterfactual" is possible, and rendering a "best estimate" of the time reasonably required to prepare, litigate and appeal the case before it limited to the single meritorious issue).

Plaintiffs here resist any reduction of their claimed hours, arguing that their claims stemmed from related legal theories involving a common core of facts and that the time spent by their counsel

in the litigation should not be parsed out on a claim-by-claim basis. (Pls.' Mot. at 4-5.) Plaintiffs also argue that their counsel's expenditure of time was reasonable given the size of the collective action, the fact that the settlement amount paid all of the unpaid final wages in the amounts stated by the opt-in plaintiffs in their discovery responses, and the timing of the entry of the stipulated judgment at the final pretrial stages of the case. (*Id.* at 5-7.) Defendants, on the other hand, argue that plaintiffs only prevailed on a small part of their claims, noting that the stipulated judgment did not include any amount of liquidated damages, which are "routinely" (to use defendants' word) awarded in cases under the FLSA. (Defs.' Resp. at 3.) Defendants assert that the fees requested by plaintiffs are "wholly disproportionate to the success achieved." (*Id*. at 1.)

In this case, a reduced fee award is appropriate given plaintiffs' limited success. Plaintiffs' complaint alleged three putative class claims. (Compl.) Although certain of the underlying facts of plaintiffs' claims are related, the claims are distinct. First, plaintiffs alleged a claim under the FLSA for failure to pay due wages, including appropriate overtime wages. (*Id*. ¶¶ 30-33.) Plaintiffs alleged that defendants' FLSA violation was deliberate, justifying an award of liquidated damages. (*Id.* ¶ 32.) Plaintiffs' second claim was brought under the Illinois Wage Payment and Collection Act for an alleged deliberate failure to pay full, final compensation to separated employees. (*Id.* ¶¶ 34-36.) Plaintiffs sought exemplary damages under that claim, too. (*Id*. ¶ 36.) Plaintiffs also alleged they had been paid with non-negotiable instruments instead of negotiable paychecks, and that their checks could be cashed only at a particular currency exchange on a specified date. (*Id.* ¶ 35.) Plaintiffs' third claim was for common law fraud, and included allegations of failure to pay final compensation due at separation and an intentional failure to provide statements explaining wages computation so as to induce employees into believing defendants had properly calculated their wages. (*Id.* ¶¶ 38-44,

47-49.) Plaintiffs also alleged that defendants unconscionably profited through the sale of defendants' mandated uniforms by insisting that plaintiffs purchase them only through a single high-priced vendor. (*Id.* ¶¶ 50-52.) Plaintiffs sought injunctive relief under this claim in addition to compensatory and exemplary damages. (*Id.* ¶¶ 54-55.)

No Rule 23 class was ever certified in this case; in fact, the District Judge denied plaintiffs' motion for class certification. (Order, Sept. 13, 2007.) [Dkt 106.] An FLSA collective action on the claim of unpaid final wages proceeded to the point of the stipulated judgment. The stipulated judgment in this action awarded 19 plaintiffs specific amounts, which, plaintiffs state, equal the amounts each claimed was owed them as final pay. (Stip. J.; Pls.' Reply at 1.)[11] Plaintiffs claim this amount as a victory, while defendants note that the amount is significantly less than that originally sought in the complaint. For example, the complaint alleged that defendants owed Riddle $672 at her separation from employment but paid her only $153, and that amount was in a check which could not be cashed because it was written on a closed account. (Compl. ¶¶ 38-40.) In the stipulated judgment Riddle received $189.73 "less legally required deductions." (Stip. J. at 2.)

The amounts received by the plaintiffs are quite modest. The 19 plaintiffs received amounts ranging from a high of $1,368 to a low of $2.19, all "less legally required deductions." While three of the 19 plaintiffs received a bit more than $1,000 each, nine of the plaintiffs got less than $200 each, "less legally required deductions." Those amounts do not appear to reflect any payment for alleged unpaid overtime work. Also, plaintiffs waived any claim for liquidated or punitive damages. Although plaintiffs are correct that the 19 plaintiffs received all that they had claimed were due them

---

[11] According to plaintiffs, 33 employees returned consents to join the suit, 29 consents were delivered to defendants, and 19 of the 29 opt-in plaintiffs returned responses to written discovery requests. (Pls.' Mot. at 5-6.)

as their final compensation, that claim represents only a fraction of what plaintiffs alleged in their complaint and pursued through the litigation. Plaintiffs plainly were not successful in obtaining all of the relief they sought in this action, and the attorneys' fee award must be adjusted accordingly.

In another category are defendants' arguments that plaintiffs spent too much time preparing the complaint, attending court appearances, and working on discovery matters, the proposed case management order, and certain other discrete tasks defendants argue were unrelated to plaintiffs' successful claims. (Defs.' Resp. at 5-8; *id.*, Exs. 2, 4-6.) The Seventh Circuit has made clear that "[a] court's focus should not be limited to the success/failure of each of the attorney's actions. Rather it should be upon whether those actions were reasonable." *People Who Care*, 90 F.3d at 1314 (finding error in district court's categorical denial of fees for time spent on unsuccessful appeal of interim fee order). Reviewing each of plaintiffs' counsel's actions with the benefit of hindsight would be unfair to plaintiffs and is not what the case law requires. Moreover, although defendants expend a great deal of effort criticizing plaintiffs' counsel's particular endeavors, each of defendants' arguments goes to their central position that because plaintiffs were only partially successful in this case, their counsel's time spent at various stages of the litigation was excessive.

The successful claim must be considered in relation to plaintiffs' unsuccessful claims. *Hensley*, 461 U.S. 435-37. Attention also must be paid to the relationship between the extent of plaintiffs' success and the amount of the fee award. *Id.* at 436; *Illinois Welfare Rights Org. v. Miller*, 723 F.2d 564, 567 (7th Cir. 1983). The stipulated judgment represents a partial victory for plaintiffs on one of the three claims raised in their complaint. It is clear, however, that plaintiffs' counsel's time in the case cannot simply be reduced to a third of what plaintiffs requested. For example, plaintiffs likely would have taken the deposition of a named defendant and they would have

responded to defendants' discovery requests regardless of whether plaintiffs were pursuing one or all three of their claims. Considering the factual overlap in plaintiffs' claims, it is therefore reasonable to estimate that 50% of plaintiffs' counsel's efforts would have been expended on discovery, court appearances, the proposed case management order, and other related tasks in furtherance of plaintiffs' successful claim even if the unsuccessful claims had not also been pursued.[12] That estimate of 50% is also appropriate in light of the limited level of plaintiffs' success when compared to the scope of the litigation as a whole. *See Spegon*, 175 F.3d at 558 (finding district court did not abuse its discretion in reducing fee request in half to account for limited success).

Defendants' objection to including any of plaintiffs' counsel's time incurred in conjunction with plaintiffs' unsuccessful motion for class certification, unsuccessful objections to the magistrate judge's report and recommendation regarding that motion, and ultimately withdrawn motion to nonsuit the case, however, is valid.[13] (Defs.' Resp. at 5-6; *id.*, Ex. 3.) Although plaintiffs obtained

---

[12] Defendants make the brief argument that plaintiffs' fees should be reduced because, defendants assert, the claims of all but seven of the opt-in plaintiffs were barred by the statute of limitations. (Defs.' Resp. at 3.) Defendants' argument is a nonstarter. The stipulated judgment included an award to 19 opt-in plaintiffs including, presumably, the plaintiffs whose claims defendants assert are time-barred. Further, defendants failed to develop that argument either on this motion or for the record before the District Judge. Defendants fail to identify such basic information as which plaintiffs' claims were allegedly barred or when their claims allegedly expired. Such an undeveloped argument is waived. *See Estate of Christopher A. Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *Madaffari v. Metrocall Cos. Group Policy GL, H-21163-0, Plan No. 501*, No. 02 C 4201, 2005 WL 1458071 at *10 (N.D. Ill. June 15, 2005).

[13] Defendants itemize 34.9 hours as relevant to this category of objection. (Defs.' Resp., Ex. 3.) (Here too, a mathematical error is noted: defendants claim a total number of hours in this category as 34.7, but by the court's calculation, there is a total of 34.9 hours in their supporting exhibit.) A small amount (.1 hour) billed by Mr. Fuoco on May 3, 2006 and included in defendants' objection, however, has already been removed from the calculation (as included in the fees award relating to the default) and is therefore not considered here. One hour billed by Mr. Fuoco on March 12, 2007

23

a recovery for certain of the opt-in plaintiffs, plaintiffs did not obtain class certification, and, indeed, obtained no relief at all on their Rule 23 class action claims. Unlike other tasks undertaken by plaintiffs' counsel in pursuit of both plaintiffs' successful and unsuccessful claims, time spent specifically in pursuit of class certification is readily identifiable and singularly geared toward the claims on which plaintiffs obtained no success. No fees therefore can be awarded for time incurred on the class certification motion or the subsequent associated efforts. *See, e.g., Day v. Check Brokerage Corp.*, No. 05 C 4912, 2009 WL 4931739 at *3 (N.D. Ill. Dec. 15, 2009) (removing hours incurred on class certification and matters related to the class where plaintiffs' counsel sought decertification after learning of defendant's lack of financial resources); *Sweet v. Corp. Receivables, Inc.*, No. 05-CV-0779, 2008 WL 2953572 at *4 (E.D. Wis. July 29, 2008) (accounting for partial success by removing from fee award time spent in pursuit of class certification where plaintiff entered stipulated judgment on individual claim prior to ruling on class motion); *Clarke v. Ford Motor Co.,* No. 01-C-0961, 2006 WL 752902 at *8 (E.D. Wis. Mar. 21, 2006) ("As plaintiff obtained no benefits for the class, the hours expended on the class claims do not form a 'satisfactory basis for making a fee award.'") (citation omitted).

Thus, 35.8 hours of Mr. Fuoco's time spent in unsuccessful pursuit of class certification, plaintiffs' objection to the magistrate judge's report and recommendation regarding the certification, and plaintiffs' ultimately withdrawn motion to nonsuit the case will be reduced from the request. The remaining hours will be reduced by 50% to account for plaintiffs' limited success. The revised

---

for appearing in court to present plaintiffs' amended motion for class certification was not included in defendants' supporting exhibit but is clearly work performed in the unsuccessful pursuit of class certification. After those adjustments, 35.8 hours of Mr. Fuoco's time are at issue on this objection.

lodestar calculation therefore is $22,775.50, comprising 50% of the total of: Mr. Fuoco's adjusted time (147.4 hours, or $36,113), Ms. Carpenter's time, ($5,092), Ms. Petermann's time ($170) and Mr. Fuoco's time spent doing paralegal work ($4,176). As set forth above, a postage expense of $285.54 also is awarded as an element of fees, bringing the amount awarded as fees to $23,061.04.

## II.     Costs

In addition to fees and associated expenses that are included as part of an attorneys' fees award, plaintiffs seek to recover costs of $642.80 for deposition transcription and $123.65 for photocopies.[14]  (Joint Stmt., Ex. A.)  As the prevailing party, plaintiffs are entitled under 29 U.S.C. § 216(b) to an award of costs in addition to their reasonable attorney's fees.  Costs considered under this fee-shifting provision are those defined in 28 U.S.C.§ 1920.  Defendants argue generally that plaintiffs' costs should not be awarded because they are "directly related to the unnecessary time attributed to unsuccessful claims and strategies pursued by Plaintiffs."  (Defs.' Resp. at 14.) Plaintiffs' respond by arguing simply that all costs should be awarded.  (Pls.' Reply at 14-15.) The parties' lack of particularity does not aid in the resolution of this portion of their dispute.

### *Deposition Transcript*

The costs of deposition transcripts "necessarily obtained for use in the case" are authorized under Section 1920(2).  Plaintiffs submit one bill of $642.80 for the March 17, 2009 deposition of

---

[14] Plaintiffs included electronic legal research charges ($1,030.02), commuter train expenses ($148.80) and postage expenses ($285.54) in their requests for costs.  (Joint Stmt. at 2.)  Those items are not recoverable under 28 U.S.C. § 1920, and were discussed above as they are more appropriately considered in conjunction with plaintiffs' request for attorney's fees.

Ibriham Kiswani, a named defendant in the case. (Pls.' Mot., Group Ex. 5.) Plaintiffs took Mr. Kiswani's deposition after the exchange of written discovery and Mr. Kiswani testified directly as to defendants' defenses to plaintiffs' claims, including the claim on which plaintiffs succeeded. (Pls.' Reply, Group Ex. A.) Defendants' objection on the ground that the deposition was not used to calculate final wages owed is unavailing since courts consistently frame the question not as whether the transcript ultimately was used at trial, but rather, whether the transcript was reasonably necessary for use in the case. *See e.g., Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998). The charges incurred for that deposition, $40 per hour attendance fee and $3.40 per transcript page fee, do not exceed those allowable in this district. *See* www.ilnd.uscourts.gov/CLERKS_OFFICE/CrtReporter/trnscrpt.htm (Oct. 29, 2007) (last visited April 20, 2010); *see also Rodriguez v. City of Aurora Police Officer J. Ithal*, No. 02 C 7588, 2003 WL 22284202 at *2 (N.D. Ill. Oct. 2, 2003) (finding that $40 per hour is a reasonable rate for court reporters). Plaintiffs' deposition cost is awarded.


### *Photocopies*

Plaintiffs do not expressly describe their claim for $123.65 in photocopy charges, although copying charges are listed in plaintiffs' counsel's billing records. Defendants argue only generally that costs related to plaintiffs' "lack of success" should be denied. (Defs.' Resp. at 14.) The prevailing party may recover "[f]ees for exemplification and . . . copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). That includes copies attributable to discovery and copies of pleadings, motions, and memoranda submitted to the court, but does not include copies made solely for the convenience of counsel. *McIlveen v. Stone*

*Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990); *Arachnid, Inc. v. Valley Recreation Prods., Inc.*, 143 F.R.D. 192, 193 (N.D. Ill. 1992). The prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). However, it must "provide the best breakdown obtainable from retained records." *Id.* While the court is mindful of the cost-benefit limitations involved in such an undertaking, information sufficient to determine the appropriateness of the request nevertheless must be provided.

In this case, only some of plaintiffs' copy charges are explained with sufficient detail so as to determine whether the charges were reasonably incurred for use in the case.[15] Other charges, although listed in the records, contain no description. Without any description, the purpose of those copies cannot be determined. Plaintiffs' copying costs in the total amount of $96.50 will be awarded, consisting of plaintiffs' photocopy costs of $.10 per page for copies of the FLSA notice and consent form mailings, defendants' discovery requests to each opt-in plaintiff and counsel's instructions regarding the same. (*See* Fuoco Aff., Group Ex. 5.)

---

[15] Indeed, it is not clear from plaintiffs' submissions which photocopy charges they have included within their request. Counsel's billing records refer to photocopy charges from outside vendors as well as internal copy charges both at Mr. Fuoco's former firm and at his solo office. This issue need not be resolved, however, given that only a portion of the copying charges are described in any way sufficient to allow the court to assess the reasonableness of those charges.

**CONCLUSION**

For the reasons stated above, plaintiffs are entitled to a total award of $23,800.34 representing $23,061.04 in attorney's fees and $739.30 in costs. The clerk of the court is directed to tax the costs against the defendants.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

April 23, 2010